We have three argued cases this morning. The first is 2208 Santos v. NASA. Mr. Bonk. Go ahead. Good morning. May it please the court. Christopher Bonk for Petitioner Fernando Santos. This court has previously remanded this case with instructions for a corrected Sheehan analysis to the board. The administrative judge has again erred in failing to correctly apply the Sheehan factors to Mr. Santos' prima facie USERRA claims, particularly where substantial evidence does not support the judge's findings on Sheehan factors two and three in particular. And additionally, the administrative judge erred as a matter of the law in applying the wrong legal standard to the agency's burden under USERRA. I turn first to Sheehan factor two to note some of the omissions from the judge's decision on pertinent testimony and evidence on the inconsistencies between the agency's actions and the reasons stated. In the lead-up to the performance improvement plan in February 2018, there was a letter of instruction issued that cited unreliable reporting. Did you specifically raise arguments to us regarding inconsistency or did you potentially forfeit those arguments? I believe those are raised pretty explicitly and I think that was a large actual portion of Petitioner's reply brief because that was a concern raised by a defendant or a respondent in that matter where we raised at length the issues with the judge's analysis within factors two and three throughout Petitioner's initial brief, Your Honor. Could you point me to pages that would raise in the ultimate brief as opposed to reply? Certainly. In our, I think we referenced the ranges of those discussions. In factors two in the petition, in the reply brief, we note a Petitioner's brief at 36 through 38 addressing the letter of instruction February 28 one that I was just referencing in my argument. There's a discussion on the judge's failure to address the letter of reprimand Petitioner's brief at 38. There's also discussions on the administrative judge's failure to conduct a proper sheet and analysis on the decision to place Mr. Santos at a PIP removing federal service at Petitioner's brief 39 through 42. So, an administrative judge doesn't have to mention each piece of evidence and analyze it, correct? Certainly, Your Honor. So, what's the legal error here? So, a couple, I think, answers to that. As far as the legal error goes, I think we would agree or concede to respondent that the assessment here is not necessarily one of legal error for that issue within the prima facie analysis, but rather whether the administrative judge's findings on those are supported by substantial evidence. But even within that context, I agree typically that the administrative judge doesn't need to assess every little bit. However, this court in looking at similar USERRA claims like in the McMillan decision back in 2016, this is not an issue where we're asking the court to re-evaluate or re-weigh the evidence. Rather, it is an issue where there is pertinent, contradictory, or contrary evidence within the case record that is very much omitted, very much outside of the realm of consideration within the administrative judge's decision. And that's where we turn to the issue or we think we get into the issue of, does substantial evidence support this? If the evidence is contradictory and the more credible or more corroborated, then you just disagree. I would agree with you, Judge, if the administrative judge had addressed any of the contradictory evidence, but it is omitted, it is excluded, it is carved out from the- But how do you know she didn't consider it? I mean, just because she didn't articulate it all, and the decision's like 10 pages long of fact findings that she found supported her ultimate decision that your client didn't need a burden of proof. A great deal of factual determination is absolutely correct, Your Honor, but again, none of the determinations there address, there's no weighing of evidence where there is contrary testimony, there's contrary fact here. And within our briefings, we point out a variety of instances throughout the record evidence that directly contradict the judge's assessment there. And that's particularly important for the Sheehan assessment here, because again, what we're looking at for Mr. Santos' prima facie burden here is not to demonstrate concretely at the end of the day, for the prima facie case at least, that his military service was the only reason for the action. Rather, what we're demonstrating here with this prima facie burden is simply that his military service was one factor, potentially of many, of why the agency took the actions that it did against him. And so, you know, particularly with respect to, you know, for example, this letter of instruction that I was mentioning previously that calls out Mr. Santos for unreliable reporting tardiness, the administrative judge's determination is contradicted by the record evidence. The judge stated that Mr. Santos did not dispute that he often arrived late, explaining that was because of medical issues, except that Mr. Santos' testimony in the record did not reflect what the judge's summation of his testimony was. Rather, he testified to his flexible work schedule that for the previous, I think it was about 18 years at NASA, he had a flexible schedule. He could not be late. He did not have a set report date. But my understanding was that at one point there was a flexible schedule, but then there was a set schedule put in place, right? At early 2018, around the time of this letter of instruction, that's correct, Your Honor, I believe it started in January 2018 and resumed or continued through February 2018, where there was this arbitrary placement on this set schedule. And again, it was not until Mr. Santos' repeated use of military leave that this alteration was put in place. Similarly, there's a May 2018 reprimand that claims on the reprimand itself a repeated failure for Mr. Santos to timely complete mandatory training. And according to the administrative judge, the reprimand was because Mr. Santos failed to take the trainings timely, except that the reprimand itself doesn't offer a single example of Mr. Santos actually missing a training deadline. And the judge's own cited example is of a Saturn training. It's one that Mr. Santos did complete by the deadline. So again, we have these instances, very clear-cut instances within the case record contradicting the judge's findings on these issues and showing that there are indeed very clear-cut inconsistencies that are simply not acknowledged, not addressed in the decision. The placement of the PIPs is a very significant one. That happened in May 2018. What would you say is your best evidence of expressed hostility in the record? I appreciate that question, Judge. So in the hostility, there's actually quite a bit of hearing testimony going back to, in part, the first hearing. Because of course, there are two hearings in this matter. There's audio testimony on the first one. So in the first hearing, Mr. Haddock, who is one of the individuals who coordinated with Ms. Ballas on placing Mr. Santos on the PIP and coordinating the proposed removal, testified pretty clear-cut to his own problems with Mr. Santos' military leave. He repeatedly complained at hearing about what he called, quote, the unfortunate timing of Mr. Santos' leave. And Mr. Haddock even alleged at hearing that Mr. Santos fabricated his need for military leave to try and escape work. The quote here is, Mr. Santos did communicate to me when he would be going on leave. In several instances, this occurred at times when there were significant assignments that were due, including briefings to the chief engineer. So it's just conjecture on my part whether this is mere coincidence or something more than that. But because of the number of times this occurred, it did bear question in my mind as to what it was going to take to get Mr. Santos to run an assignment through completion. And so Mr. Santos, or Mr. Haddock, is specifically stating here, specifically expressing his frustrations with Mr. Santos' leave and even alleging— Well, to some extent, Haddock is saying Santos didn't accommodate his leave by completing his work as he should have before he went on leave and picking up the ball when he got back. There's nothing wrong with criticizing somebody for doing that, right? So it's an important distinction, I think, in the context of usuric claim, where— Well, now answer my question. So I think it is a distinction. I agree. Absolutely, Judge. There is a distinction there. And I think there can be legitimate criticisms there. But I think there's a distinction to draw for a usuric claim on that, where— And I think this court addressed that to some extent in some of the Erickson determination in 2016, where there can be some reasons for taking action against an individual. But again, where it is a motivating factor, where the military service is one of the motivating factors, that's where it becomes impermissible. Well, I'm not understanding. Are you agreeing with me that criticizing somebody for not accommodating his military leave by finishing his work before he goes on leave and not picking up the ball when he gets back is not hostility toward military status? I believe I'm agreeing with you, Judge, where there can be legitimate criticisms with that. Okay. So to some extent, Santos goes beyond that and is frustrated by the taking of the leave itself, right? Correct. But is there any suggestion that Santos in some way was retaliated against by Haddock because of this? Haddock wasn't his supervisor, right? Correct. Mr. Haddock was not a supervisor. He was an individual he worked with closely. And so Mr. Haddock's feedback on Mr. Santos was relied upon in taking the actions against him. So as far as a separate retaliation claim, that's not what we're raising here today. Rather, the criticism, the hostility, Mr. Haddock's concerns with Mr. Santos' military leave being utilized, playing a part within this broader Sheehan assessment on was his military leave a motivating factor, one motivating factor in the actions taken against Mr. Santos. And Mr. Haddock testified not just— So Dales, who was his supervisor, didn't express any hostility toward him because of his military leave, right? Incorrect, Judge. And that's another point here. Where did she do? Where's the testimony that she did that? And so actually, Mr. Haddock specifically testified to that as well. And he spoke to his conversations, his correspondence with Ms. Ballas on Mr. Santos' military leave. And Mr. Haddock testified that Ms. Ballas— He said he wanted to know where Ms. Bales, isn't that right? Well, either Bales herself or Santos describing conversation with Bales. Where's their evidence that Bales expressed hostility toward him because of his military leave? So as far as Mr. Santos' testimony, there's testimony in the record on Mr. Santos articulating his meetings with Ms. Bales following his— I think immediately preceding his military leave where she was less than enthused. I believe Mr. Santos referred to it as a pregnant pause when he raised that he would be going out on leave imminently. But Mr. Haddock actually testified to his conversations with Ms. Ballas about concerns Mr. Santos' military leave. Concerns that Bales expressed? Correct. And Mr. Haddock stated that Ms. Bales had questions on the frequency of the military leave. And when he was asked whether Ms. Bales was concerned that Mr. Santos was taking more military leave than he could officially take, Mr. Haddock confirmed yes at testimony. Okay, but that's not expressing frustration with taking legitimate military leave. It's questioning whether the leave was legitimate. So questioning whether the leave is legitimate doesn't express hostility toward the military leave, does it? I see what you're saying there, Judge, but I think we do have clear-cut testimony from Mr. Haddock on that, on clear hostility towards—repeatedly throughout the hearing on— Okay, but I'm asking about Bales. I didn't see anything where Bales said that she was hostile to him or upset with him for taking military leave. Correct, Judge. And is there an instance where Ms. Bales went out and said very straight up, you know, I am hostile toward your military leave? No, it's not on the record. And that's, I think, it is an important consideration, though, within a Sheehan assessment. I think that's one of the reasons why the Sheehan analysis is as it is because it's very infrequent that we're going to have a situation where an employer is going to come out and say something like that clear-cut, say I'm hostile to your military leave. I'm going to take action against you before the military leave. I think you've got plenty of cases where people have been recorded as saying hostile things, right? Certainly, but that's—the Sheehan assessment takes into that consideration that all too often what employees are focused on are left with—and I see I have exceeded my main argument time there. Go ahead, finish. Certainly. All too often what the focus of the Sheehan assessment is is looking at this totality of circumstances, looking at the evidence as a whole, not necessarily in reliance on particular direct evidence of hostility in order to support the Supreme Faction case. And our position is that the totality of the record evidence, as ignored by the judge, is indicative of these additional factors in Mr. Santos' favor such that— In your conclusion it was ignored is because it's not enumerated in her order, as opposed to her having written what she found persuasive, corroborated, incredible? In part, yes, Judge. Okay, we'll give you two minutes for a bubble. Thank you, Judge. Mr. Kipura, am I pronouncing that correctly? Yes, Your Honor. Good morning, Your Honors, and may it please the Court. Mr. Santos' argument challenging the Board's USERRA finding amounts to nothing more than disagreement with the Board's weighing of the evidence and credibility determinations. As we discussed in our brief, the Board analyzed the relevant evidence in detail and provided its determinations as to the credibility of the relative weight of evidence. While Mr. Santos may disagree with the Board's findings on these points, his disagreement cannot serve as a basis to disturb the Board's decision. What Santos is saying is there was relevant evidence about hostility expressed by Haddock, which wasn't analyzed by the administrative judge. And so what's the answer to that? Well, I think the Court made some of those points earlier. First of all, the Board did discuss Mr. Haddock's testimony, and Mr. Haddock was also not Mr. Santos' supervisor. But I think beyond that, any of the comments that Mr. Haddock may have made in his testimony regarding, you know, frustration or something like that, were not expressing hostility to Mr. Santos' military leave. Mr. Haddock was the individual who was covering for Mr. Santos while he was on leave. So some of his statements about, you know, work not being completed before he left or failing to pick it up when he came back, is referring to his issues with having to cover for him and the work that was done while Mr. Santos was in the office. And I think that's really the key point here, is what the Board found after going through all of the evidence and testimony and, you know, documentary evidence, is that the agency's issue with Mr. Santos didn't have anything to do with his military leave. It had to do with his performance when he was in the office. And that's what the Board ultimately found. Where is that finding? Well, I'm... Essentially what I'm saying, Your Honor, is that the Board agreed with the agency's determination or the Board sustained the agency's determination as to Mr. Santos' performance. And all of those performance findings had to do with the quality of his work while he was in the office. Okay, so there's no such specific finding. What does the agency say about the Haddock testimony? Where is that? Bear with me for a moment. Well, as the Court noted earlier, in the record from pages 41 to 60, there's an extensive recitation of the chronological evidence, you know, during this time period. So I'm looking at, you know, the Board discusses Mr. Haddock's testimony extensively from pages in the Appendix 43 through 44, 45, 46, where it's noting these meetings and discussing Mr. Haddock's testimony on those points. But more specifically... Where does it specifically... Where does the A.J. specifically address Haddock's testimony about his frustrations, if anywhere? I don't believe it specifically says... Speaks to... Oh, excuse me, Your Honor, page 66. 66? Yes, where it's... This is now into the section of the opinion discussing the Sheehan factors, where it's discussing Haddock's testimony and the concerns that Mr. Haddock and Ms. Fineri, you know, another employee at NASA, had with Mr. Santos's work product. Okay, but that's different. That's not... I'm talking about his testimony that he was frustrated about the leave, the amount of leave that Santos took. There's no mention of that, right, in the A.J.'s decision, which I think is their argument that he should have addressed that. Well, lower down on that same page, the A.J. discusses Mr. Santos's testimony on that point, where he says... He's quoting now deep in his bones that Ms. Bales was irritated with his use of leave and his performance, which was acceptable as an excuse to remove him. So, it's discussing this idea that these employees were frustrated or irritated with the use of leave. Haddock's frustration, his own frustration is not described here, right? Not specifically, no, Your Honor. Okay. I mean, I think that's their argument, is that it should have been discussed specifically. What's the answer to that? Well, as the court noted earlier, there's the case law which states that, you know, the board does not need to address every single piece of evidence in order to justify its decision. And again, there's an extensive discussion here in the first 20 pages of the opinion outlining all of the evidence that the board took into account throughout this entire period, both from the documentary evidence as well as testimony. How does Mr. Haddock's frustration play in, given the fact that he is not the ultimate decision maker? Does that affect any of your arguments? Well, yes. I think that's a key point, Your Honor, which is that he's not the decision maker. He's another employee within NASA. And, you know, whether he had frustrations or not, the fact remains that Mr. Santos' supervisor never denied any of his military leave. And Mr. Santos himself testified that Ms. Bales never pushed back on his requests for military leave. Well, Haddock's not just a co-worker. I mean, he also had some input in the evaluation of Santos' work, right? I believe he had a role in sort of reviewing the work product and submitting, you know, those comments to Ms. Bales. But he was not the ultimate decision maker. So only hostility by the ultimate decision maker is relevant? I wouldn't go that far, Your Honor. But what I would say is that the board here found that there was not hostility towards Mr. Santos. By Bales, right? Well, I think the board's decision focuses on Ms. Bales as a, you know, particularly relevant witness as his supervisor. But the standard in what the board says refers to the employer generally. So, you know, we're talking about the agency. So, yes, Ms. Bales is represented. Is there a general finding that the employer did not express hostility? Yes, in that same section we were just referring to at pages 66 through 68. Tell me specifically where that finding appears. What the board found was that Mr. Santos had not carried his burden by a preponderance of the evidence of showing that the agency expressed hostility towards his military leave. Where is that? That is on page 66 where the board opens up and says that the third factor, which is this hostility factor, weighs in the agency's favor. Where's the material you're quoting? I'm sorry, I couldn't hear you. 66, where's the material you're quoting on 66? The second full paragraph on 66, the third factor, and employers expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, also weighs in the agency's favor. And that brings me to another relevant point here, which is that Mr. Santos has raised an argument before this court that the board applied an improper standard of review. That's not correct. There were two portions to the board's decision. The first part had to do with the review that was ordered by this court in the previous remand opinion of having the board review whether or not the agency had established that Mr. Santos, prior to his placement on the PIP, the performance improvement plan, was supported by substantial evidence. That was the standard of review that this court directed in its previous decision. So that's what the board analyzed for that portion of its opinion. And they found that it was supported that his performance was not acceptable, and that's not being appealed. That's correct, Your Honor. With regard to the second question, the USERA issue, again, the USERA statute creates a burden-shifting mechanism. The burden is initially on the appellant to show by a preponderance of the evidence that he's met his prima facie case. Here, the board found that Mr. Santos had not done so. So the burden never shifted to the agency. There was never any reason for the board to look at the agency's justifications under a preponderance of the evidence because it found that Mr. Santos had not initially carried his burden. So again, the board applied the proper standard of review to both pieces of its decision. Anything more? Nothing further, Your Honor. Okay. Thank you. Thank you. Mr. Bonk, you have two minutes. Thank you. Two minutes. May it please the court. So to address some points my colleague raised there, you know, Mr. Haddock was not the ultimate decision maker. But however, his role is significant. He did help kick off the PIP. His ballots relied upon him. And as I believe is noted in the briefings, I believe at page 29, petitioner notes the significance. His comments within the, you know, there's case law on the individual influencing this action may still be considered a... If his comments went to the determination that the PIP was appropriate, and the PIP was found to be appropriate because his performance was not up to par, you're not appealing that. Then doesn't that color a little bit your comments that he's frustrated because of military leave as opposed to just performance problems? No, I disagree. I don't think that's the case, Judge. And I think it's an important distinction to make here because the PIP placement issue, I think that you're referring to, is an assessment by the judge on a whole separate burden of proof. The Title V, Chapter 43 performance action, substantial evidence, very deferential. In fact, the judge noted in the first decision how deferential it is in the context of we're talking about a rocket scientist performance. A wholly different burden of proof on the agency for the USARA claims, preponderant evidence to demonstrate that they would have taken that action anyway. And so I think it is... Right. But your evidence that you suggested to us was that Haddock, as somebody who was working with or in place of Mr. Santos, was frustrated and expressed frustration because it was related to leave. And yet there's also evidence in the record here that your client's best comment was he just felt in his bones people were irritated that he was taking so much leave. And yet his direct supervisor was never pushed back, tried to get him telework opportunities while he was on leave if that was doable. So anyway, people expressing frustration because the job's not getting done doesn't necessarily equate to because he's on military service, but rather his performance when he's there. I see what type of... I don't know if my answer... So I think it raises an excellent point there, Judge, where the framework here that we're looking at is not... It's not just the expressed hostility, the statements of hostility. There's a larger tapestry of hostility within the evidence here that we've addressed. In part, the actions taken against Mr. Santos, there's constant comments intermixed with his military leave on lack of engagement. There's reference in that lack of engagement comment continuing throughout his military service with this particular group. It's similar to the terminology of this court noted in McMillan, where the agency was offering after-the-fact justifications for a failure to engage. It's these buzzwords that are indicative of hostility towards the leave that are not just limited to specific direct statements by management. Okay. All right. Thank you. Thank you. Thank you both, counsel. The case is submitted.